IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEWAYNE WASHINGTON,<br><br>                    Plaintiff,<br><br>        vs.<br><br>J. TURNER, et al.,<br><br>                    Defendants. | Case No. CIV S-01-1677 JKS P<br><br><br>O R D E R |

## INTRODUCTION

Plaintiff DeWayne Washington is a California state prisoner serving a term after having been convicted of state crimes in state court. He brings this action pursuant to 42 U.S.C. § 1983 against several of the correctional officers responsible for his custody, alleging that he has been the victim of conscious indifference to his medical needs and of retaliation for filing grievances against prison officials. Docket No. 11 at 3. This Court has jurisdiction. 28 U.S.C. § 1343.

## FACTUAL AND PROCEDURAL BACKGROUND

Washington alleges that he suffers from "muscular-skeletal" problems—a bad back, a bad toe, and arthritis—and lung or pulmonary problems. Docket No. 11 at 3. As a result, he was seen by doctors employed by or contracted with the state prison system. *Id*. His physician determined that Washington should not be assigned to a top tier of the prison and that he could not lift more than a limited amount of weight. *Id*. The doctor reduced this "treatment plan" to writing in what Washington refers to as a "chrono." *Id*. He gave copies to Washington so that he could show them to responsible correctional officials in order to assure that he would be placed in a lower tier. *Id*. Washington contends that he showed his chrono to Defendant J. Turner, among others, but she

1

ignored the chrono and kept him on an upper tier.  As a result, he suffered excruciating pain, of which Washington alleges Turner was aware.  *Id*.

Washington contends he filed a grievance against Turner at the initial stages of the administrative remedy system.  *Id*.  But immediately after filing the grievance, he was placed in administrative segregation for no reason.  *Id*. at 3–4.  Washington alleges on information and belief that his placement in segregation was "retaliatory" because of its temporal proximity to his filing the grievance, because there was no reason to put him in segregation, and because Defendant D.A. Park told Washington that he would remain in segregation until his grievance against Turner was resolved at all levels of administrative review.  *Id*. at 4.  Given this "threat" to keep him indefinitely in segregation, Washington abandoned his administrative appeals, was released from segregation, and brought this action.

Unfortunately, this case has languished on the Court's docket for some time.  Paying heed to the adage that justice delayed is justice denied, the Court will turn to the issues holding up the case's ultimate resolution.  In March 2004 this Court addressed a number of pending motions.  *See* Docket No. 81.  Chief among those motions was Defendants' motion to dismiss for failure to exhaust administrative remedies.[1]  It is undisputed that Washington did not exhaust his administrative remedies.  However, the district judge previously assigned to this case, who adopted a report and recommendation from a magistrate judge also previously assigned to this case, found the exhaustion requirement excused because of the alleged threats to Washington.  The district judge agreed with the magistrate that Washington had stated cognizable claims against Defendants Turner and Park because Washington alleged that those Defendants' threats had prevented Washington from exhausting his available remedies.  *See* Docket No. 43.  The court dismissed the rest of the Defendants for failure to exhaust.  *Id*.

After the case was reassigned to this Court, the State moved for reconsideration of the denial of its motion to dismiss for failure to exhaust as to Park and Turner.  It later filed an additional

---

[1]  Defendants filed a motion to dismiss as well as a motion for reconsideration of a prior order denying the original motion to dismiss as to Defendants Turner and Park.

ORDER

motion to dismiss based on the same grounds.  Acknowledging that exhaustion was an issue of abatement, not going to the merits of the action, the Court recognized that it could rely on affidavits, declarations, and other evidence to evaluate the exhaustion issue.  To avoid the expense of a full-blown hearing, the Court granted the State's motion for reconsideration and allowed the parties additional time to take the depositions of Turner, Park, and Washington in the hopes that the issues surrounding exhaustion would more clearly present themselves.  The Court then suggested that the parties file supplemental briefs along with any new evidence they found compelling on the exhaustion issue.

After taking Washington's deposition, the State filed a motion to dismiss or in the alternative motion for summary judgment along with a memorandum of points and authorities in support of its motion.  *See* Docket Nos. 90 (Mot.); 91 (Mem.).  Washington opposes the motion, Docket No. 95, the State has replied, Docket No. 99, and Washington has filed what amounts to a surreply, Docket No. 100.  In addition to the exhaustion arguments referenced above, the State also argues that Park and Turner are entitled to summary disposition on the merits of the complaint or, in the alternative, qualified immunity.  It is these contentions to which the Court now turns.

## DISCUSSION

### I.    Exhaustion

A motion to dismiss for failure to exhaust falls under the unenumerated ambit of Federal Rule of Civil Procedure 12(b).  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).  Exhaustion is an affirmative defense that must be raised and proved by the defendants to a § 1983 suit.  *Id*.  The basic requirement under the Prisoner Litigation Reform Act ("PLRA") is that all non-judicial remedies, i.e., administrative remedies, must be exhausted before a prisoner may file suit in federal court.  42 U.S.C. § 1997e(a).  In making the exhaustion determination, courts "may look beyond the pleadings and decide disputed issues of fact."  *Wyatt*, 315 F.3d at 1119–20.  The proper remedy for failure to exhaust is dismissal of the unexhausted claims without prejudice to their renewal once they have been exhausted.  *Id*. at 1120.

As the Court explained in its earlier order, Washington has alleged a compelling circumstantial evidence case in support of his argument to excuse his failure to exhaust—he filed a

ORDER

grievance against Turner, was immediately placed in segregation without any reason or explanation, was told by Park that he would remain in segregation until his grievance against Turner was resolved, accepted the hint, withdrew the grievance, and was immediately released from segregation.  Docket No. 81 at 4.  In its latest motion the State argues that Washington was placed in administrative segregation—not because Park or Turner retaliated against him for filing an administrative grievance—but rather because Washington himself asked to be placed there.  Docket No. 91 at 5–6.  It points to several administrative prison forms, each of which were filled out by various prison guards, stating that Washington requested to be placed in administrative segregation. *See* Docket No. 91, Ex. D (Wash. depo), Exs. D–G.  Washington in turn maintains that the State's exhibits are consistent with his story of retaliation.  In other words, he denies asking to be put in administrative segregation and accuses the guards of essentially lying on the administrative segregation forms.  He claims that Park told Washington that if Washington did not agree that the whole incident concerning Washington's grievance against Turner was a "big misunderstanding," then Washington would remain in segregation.  Docket No. 95 at 13–14; 100 at 3–4.  Consistent with his story, Washington points out that he refused to sign the administrative segregation forms because they were not factually accurate.  *See* Docket No. 91, Ex. D (Wash. depo.), Exs. F–G.

The Court recognizes the State's wish to resolve the exhaustion issue without proceeding into a more formal proceeding.  Toward this end, the Court recommended the deposition solution.  However, it is clear that the parties' contentions rest on resolving issues of material fact.  Clearly, such issues are not appropriately resolved at the dispositive motion stage.  Either Turner and/or Park threatened Washington with administrative segregation or they did not.  If they did, it is conceivable that they could attempt to hide their actions by creating other explanations on official prison forms.  At that point, it would be Washington's word against theirs.  Where these stories diverge, the Court cannot make credibility determinations from an inanimate record.  The State's motion on this point must therefore fail at this stage.

The State makes the additional argument that because Washington did not exhaust his remedies against *all* of the defendants he named in his amended complaint, the action cannot continue as to *any* of the defendants.  Docket No. 91 at 6.  This so-called "total exhaustion" rule is a

ORDER

disputed proposition of law that has not been definitively ruled on by the Ninth Circuit.  *Compare Blackmon v. Crawford*, 305 F. Supp. 2d 1174, 1178–81 (D. Nev. 2004) (holding that proper remedy is to allow prisoner to amend complaint to allege only exhausted claims) *and Cooper v. Garcia*, 55 F. Supp. 2d 1090, 1094–95 (S.D. Cal. 1999) (concluding that proper procedure under PLRA is to dismiss without prejudice unexhausted claims and address merits of exhausted claims) *with Mubarak v. Cal. Dep't of Corr.*, 315 F. Supp. 2d 1057, 1060–61 (S.D. Cal. 2004) (noting that district courts in the Ninth Circuit are split on this issue, listing cases, and holding that total exhaustion rule is better reading of PLRA's requirements).  The primary policy ground upon which the disagreeing courts seem to differ is which procedure will better promote judicial efficiency.

In this case, it is clear that efficiency has not been in great supply.  The Court concludes that not applying the total exhaustion rule to this case would promote the greatest efficiency and therefore declines to apply it to Washington's case.  This conclusion is buttressed by the fact that even had Washington tried to exhaust remedies against the prior dismissed Defendants, his grounds for exhaustion regarding Parks and Turner rest on their alleged interference with his administrative remedies.  Thus, the exhaustion inquiry would be separate from the other Defendants because those Defendants were apparently not involved in the alleged interference.  In other words, if such threats would be sufficient to excuse Washington from exhausting his remedies against Parks and Turner individually under prevailing federal standards, it is unclear why the answer should change when Washington brings claims against other Defendants; all of whom the Court has previously dismissed from this case.

## II.   Deliberate Indifference

To make a claim, Washington must show that Defendants exhibited "deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  Such a showing is sufficient to demonstrate the "unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."  *Id.* at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)) (internal quotation marks and citation omitted).  The Constitution "does not necessitate comfortable prisons," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)), nor is the Eighth Amendment a mandate for "broad prison reform" or excessive federal judicial

ORDER

involvement, *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).  However, the Eighth

Amendment does not permit inhumane conditions, and prison conditions are subject to scrutiny

under its provisions.  *Farmer*, 511 U.S. at 832.

The United States Supreme Court has outlined a two-part test to determine if prison officials

have violated a prisoner's rights under the Eighth Amendment:

> [A] prison official violates the Eighth Amendment only when two requirements are
> met.  First, the deprivation alleged must be, objectively, sufficiently serious[;] a
> prison official's act or omission must result in the denial of the minimal civilized
> measure of life's necessities. . . . The second requirement follows from the principle
> that only the unnecessary and wanton infliction of pain implicates the Eighth
> Amendment.  To violate the Cruel and Unusual Punishments Clause, a prison official
> must have a sufficiently culpable state of mind.

*Farmer*, 511 U.S. at 834 (citations and internal quotations omitted); *see also Wilson v. Seiter*, 501

U.S. 294, 299–300 (1991) (discussing subjective requirement); *Johnson v. Lewis*, 217 F.3d 726, 731

(9th Cir. 2000) (discussing two-part test); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996)

(same); *Wallis v. Baldwin*, 70 F.3d 1074, 1076–77 (9th Cir. 1995) (same); *Allen v. Sakai*, 48 F.3d

1082, 1087 (9th Cir. 1994) (same).

With regard to the first requirement, "[t]he circumstances, nature, and duration of a

deprivation of [shelter, food, clothing, sanitation, medical care, and personal safety] must be

considered." *Johnson*, 217 F.3d at 731.  "The more basic the need, the shorter the time it can be

withheld." *Hoptowit*, 682 F.2d at 1259.  Deprivation of basic necessities for even brief periods can

constitute a violation whereas more moderate deprivations must be more lengthy or ongoing.

*Johnson*, 217 F.3d at 731–32.

As to the second requirement, the relevant state of mind is "one of 'deliberate indifference'

to inmate health or safety." *Farmer*, 511 U.S. at 834.  To show deliberate indifference, the inmate

must prove that "the official knows of and disregards an excessive risk to inmate health or safety;

the official must both be aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists, and he must also draw the inference." *Id*. at 837.  "Thus, *Farmer*[]

requires an inmate to show that the official knew of the risk *and* that the official inferred that

substantial harm might result from the risk." *Wallis*, 70 F.3d at 1077.  The "prison official need not

have acted 'believing that harm actually would befall an inmate; it is enough that the official acted .

ORDER

. . despite his knowledge of a substantial risk of serious harm.'" *Id*. (quoting *Farmer*, 511 U.S. at 842) (omission in original).  The question of the official's knowledge is a question of fact.  *Farmer*, 511 U.S. at 826.

The State makes several arguments in support of its contention that Washington's claims fail on their merits.  First, it argues that Washington fails to meet the objective component of the *Farmer* standard because his claims fail to outline "the existence of the high level of risk of serious harm or injury."  Docket No. 91 at 7.  Related to this point, the State also argues that the absence of any harm to Washington negates his Eighth Amendment claims.  *Id*. at 9–10.  Second, it maintains that Washington fails to meet the subjective standard because he fails to allege that Defendants were aware of any risk of harm.  *Id*. at 8.  Third, the State argues that even if Washington demonstrates some inadequate "attentiveness" to his medical needs, Park and Turner are entitled to qualified immunity.  *Id*. at 10–11.  And finally, the State contends that there is simply no evidentiary basis for Washington's claim of retaliation.  *Id*. at 12–13.

### A.    Objective Requirement

As to the State's first contention, their argument seems to be that because Washington's injuries were preexisting, his claims must fail.  *See* Docket No. 91 at 9–10.  Simply put, this argument fails.  From a common sense standpoint, were this proposition prevailing law, its logical extension would be that a prison official's conduct would be condoned, however cruel or inhuman, so long as all it did was make prior injuries worse.  The stating of the argument's reach should suffice to show its merits.  In the event it does not there is support for the proposition that conduct aggravating preexisting injuries may be the basis of harm sufficient to describe a cognizable claim under § 1983.  For example, in *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam), a prisoner sued prison officials for physical suffering related to "aggravation of a preexisting foot injury and a circulatory ailment caused by forcing him to sleep on the floor of his cell with only blankets."  *Id*. at 520.  In overturning the district court's dismissal of the case, as well as the appellate court's affirmance, the Court explained that the prisoner's claims, however inartfully plead, were sufficient to allow him to offer supporting evidence.  *Id*.

ORDER

C:\WINDOWS\Temp\notes4BF954\S-01-1677.003.wpd

The Court recognizes that the posture of that case was different that the instant case.  In *Haines* the district court granted the State's motion to dismiss for failure to state a claim under Civil Rule 12(b)(6).  *Id*.  In the current case, the State has moved for summary judgment.  However, Washington alleges a variety of injuries and pain to which he connects his confinement on the upper tier of the prison.  He alleges that he was taking medication treating his Hepatitis.  Docket No. 91, Ex. D (Wash. depo.) at 42; 95 at 7.  The combination of the medication's side effects and the pain associated with his "musculoskeletal disorder" and arthritic hips caused Washington "excruciating" pain that extended to every bone in his body when he was forced to walk up and down the stairs to reach his cell.  Docket No. 95 at 9.  The proper inquiry is not whether the injuries occurred in the first place as a result of Defendants' actions but rather whether the injuries were serious enough standing alone to constitute harm that is objectively sufficiently serious.

Washington's allegations meet this standard.  His claims extend beyond the State's recasting of the pain as "minor trouble or discomfort."  *See* Docket No. 91 at 7.  While there may be no "medical records or assessments" in the record documenting in detail the difference in Washington's condition before and after the alleged conduct that caused the allegedly excruciating pain, Washington's condition was clearly bad enough to warrant a medical chrono that proscribed his placement on the upper tier.  As to the specific pain, Washington himself can testify to the pain that he allegedly endured as a result of Defendants' conduct.  As to documentary evidence, Washington includes as exhibits numerous medical records from his prison file documenting his treatment for lower back pain, as well as restrictions on heavy lifting and climbing stairs.  Moreover, the medical chrono at issue in this case specifically points to a "musculoskeletal disorder," along with a "asthma/lung disorder" and "Hepatitis C Treatment," as the reasons for Washington's restriction to a lower bunk in a lower tier.  *See* Docket No. 91, Ex. E at 4.[2]  Defendants' argument fails on this point.

---

[2]  As will be more fully explored below, there are what amounts to be competing "versions" of this medical chrono—one with the lower bunk/lower tier restrictions and one without.

ORDER

**B.      Subjective Requirement**

The State's argument here is that Washington alleges no facts showing that Defendants were "subjectively aware of a significant risk of serious harm." *Id*. at 8.  But the State's argument succeeds or fails on whatever Washington presented to Park and/or Turner informing them of his condition.  Washington claims to have shown both Turner and Park the medical chrono that documented Washington's restricted housing status.  Docket No. 11 at 4.  Park admits that Washington showed him a medical chrono dated March 21, 2001, but does not recall if it indicated that Washington had a lower tier restriction. Docket No. 91, Ex. B at 2.  Turner denies recalling Washington ever showing her any medical chrono dated March 21, 2001.  *Id*., Ex. C at 2.  And, to further complicate matters, there are *two* medical chronos in Washington's medical file dated March 21, 2001—one that includes the lower tier/lower bunk restriction because of Washington's musculosketal disorder and one that does not include the restriction.  *See id*., Ex. E.  From these two chronos the State argues that mistakes or confusion regarding the extent of medical restrictions cannot be indicative of the specific intent or criminal recklessness necessary to satisfy the *Farmer* inquiry.  *Id*. at 8.

The Court disagrees.  Generally, the question of a prison official's knowledge is a question of fact.  *Farmer*, 511 U.S. at 826.  Nowhere is this more true than the present case.  The two chronos outline an issue of material fact that is essential to resolve in evaluating Washington's circumstantial case against Park and Turner.  Washington alleges that the chrono without the restriction is a forgery placed in his file to account for the prison officials' competing story.  The State admits there are two chronos but offers no explanation for the discrepancy.  Thus, the Court is left to resolve the import of the two competing chronos; a resolution clearly inappropriate at the summary judgment stage.  Either Washington showed Park the medical chrono with a medical restriction, and Park then chose to ignore it—a choice Washington explains by pointing to his prior grievance against Turner—or Washington did not.  While Park claims that he did not see the chrono with a medical restriction, or at least he cannot recall seeing it, Washington is equally sure that he showed the restriction to Park.  Washington explains further that he repeatedly told Park about his medical condition, as well as the pain created by having to ascend the stairs to the upper tier cell,

ORDER

and that Park ignored him.  If indeed Park was aware of these facts, then Washington's allegations make out a case where the ultimate factfinder could find that his intent was to deliberately inflict suffering upon Washington.  Similarly, Washington's claims of showing Turner his medical chrono directly conflict with Turner's account of not recalling the chrono.

### C.   Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-part test to determine whether qualified immunity is applicable.  First, the Court determines if the facts alleged, taken in the light most favorable to the injured party, show a constitutional violation.  *Id*. at 201.  This determination mirrors the substantive summary judgment decision on the merits.  *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).  Second, if there could have been a constitutional violation, the Court determines if the law clearly established the infringed right at the time of the violation and if qualified immunity is therefore appropriate.  *Saucier*, 533 U.S. at 201.

Having already determined that Washington's allegations, if proven, could describe a violation of his Eighth Amendment right to be free from cruel and unusual punishment, the Court turns to the second prong of the *Saucier* analysis—whether the right was clearly established.  Determining whether a right is clearly established "requires a two-part inquiry:  (1) Was the law governing the state official's conduct clearly established?  (2) Under that law could a reasonable state official have believed his conduct was lawful?"  *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Browning v. Vernon*, 44 F.3d 818, 822 (9th Cir. 1995)).  "However, '[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050 (9th Cir. 2002) (quoting *Saucier*, 533 U.S. at 202).  In making this determination the Court may look to any available decisional law establishing the right, including that from other circuits and state supreme courts.  *Capoeman v. Reed*, 754 F.2d

ORDER

1512, 1514 (9th Cir. 1985).  Even unpublished opinions may "inform" the analysis.  *Sorrels*, 290 F.3d at 971.

The broad contours of a prisoner's right to be free of cruel and unusual punishment is clear, as the Court has outlined above.  Equally clear is the proposition that prison officials may not retaliate against prisoners for filing official grievances.  *See generally Hines v. Gomez*, 108 F.3d 265 (9th Cir. 1997).  Perhaps in recognition of the fact that there are no cases directly on point with the particular facts of this case, the State does not point to any decisions from this circuit or its sister courts showing that the rights in question were not clearly established.  Nor is the State likely to have found any since Washington's claims describe a basic case of retaliation.

Rather than relying on precedent, the State points to the two competing chronos to advance its contention that Washington establishes "at best, an inadvertent or mistaken failure to give a chrono its due consideration of a failure to decipher the inmate's true medical condition."  Docket No. 91 at 11.  As the Court has described in some detail, Washington's allegations do more than describe a mistake.  He alleges purposeful conduct by Park and Turner ignoring his medical condition in the hopes of coercing Washington to drop his grievance against Turner.  And, the fact that there are two existing chronos, each creating contrasting stories, does little to support Park and Turner's claim of qualified immunity where there is no explanation for the existence of the two chronos.  If they did indeed ignore Washington's chrono as part of a concerted, coercive effort to get Washington to dismiss his grievance, such conduct would clearly be prohibited and would violate Washington's clearly established rights.

### D.    Retaliation

Retaliation for the exercise of constitutional rights is itself a constitutional violation.  *See generally Rizzo v. Dawson*, 778 F.2d 527, 531–32 (9th Cir. 1985).  To make out a claim of retaliation, Washington must "allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline."  *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994).  The plaintiff must further plead facts showing that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind a defendant's conduct.  *Mt. Healthy City School*

ORDER

*Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  Such claims must be more than speculative or hypothetical; a prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  *Frazier v. Dubois*, 922 F.2d 560, 562 (10th Cir. 1990).

As the Court has already outlined, Washington has made out a circumstantial case of retaliation.  While the State is correct that administrative segregation does not violate the per se rights of an inmate, *see Sandin v. Conner*, 515 U.S. 472, 484 (1995), the authority of the California Department of Corrections to place prisoners in administrative segregation is not at issue.  That prison officials have the authority to place prisoners in administrative segregation as part of the normal prison disciplinary system or as a routine part of investigations is not in doubt.

Washington's allegations do not outline the typical application of administrative segregation.  Rather than being the result of a disciplinary process or a routine part of the investigative process, Washington alleges that Defendants used the segregation to prevent Washington from proceeding with his grievance against Turner.  Nor is the State's argument regarding Washington's "statements" requesting placement in administrative segregation persuasive.  As the Court explained above, Washington disputes that he ever requested to be placed in administrative segregation and claims that all statements to that effect were created by prison officials.

## CONCLUSION

The resolution of this case presents a dilemma for the Court.  The period for filing dispositive motions has run.  Granting the State's motion for summary judgment is clearly inappropriate giving its foundation on material issues of fact, necessitating what would look to be a trial on the merits.  However, the exhaustion issue has not yet been definitely resolved.  If the Court were to find in Washington's favor on the exhaustion issue, then a trial would appear to be the next likely step.  On the other hand, were the Court to find that neither Park nor Turner prevented Washington from exercising his administrative remedies, then the Court would then have to dismiss this case without prejudice in order to allow Washington to exhaust those remedies.

Relevant to this inquiry, as well as the going to the merits of the parties' respective arguments, the existence of the two medical chronos discussed above has not been adequately addressed.  The State has not identified the author or attempted to explain why or how the two

ORDER

chronos could exist dated the same day.  It would seem to the Court to be a matter of tracking down whichever doctor authorized the restrictions, determining whether it was indeed the doctor's signature on one or both of the chronos, and then filing an affidavit from the doctor, as well as from any of the relevant prison officials involved, stating the circumstances surrounding the creation of the chronos.  If the doctor remembers preparing one or perhaps remembers creating two chronos, both on the same day, then he or she could explain the how and why behind their creation.

Accordingly, the Court will hold off ruling on the State's motions to dismiss and for summary judgment until the circumstances surrounding the two medical chronos have been further explored.  To avoid the cost of a full-blown hearing and a potential trial to explain circumstances that may be effectively outlined in briefing and affidavits, the Court directs the following.  The State is directed to file a brief with the Court addressing the circumstances surrounding the creation of Washington's medical chronos dated March 21, 2001.  The brief should be supported with affidavits from the doctor who signed the chrono(s), as well as from any other prison officials who may have been involved with the creation of the chrono(s).  The State's brief will be due **on or before Friday, August 5, 2005**.  Washington's opposition to the State's brief will be due **on or before Friday, August 19, 2005**.  Washington may also support his opposition with relevant documentary evidence and affidavits.  After the Court has received the parties' briefings, and recognizing that this case has been pending for some time, it will promptly rule on the motions to dismiss and for summary judgment, as well as determine if further proceedings in the case are necessary.

**IT IS SO ORDERED.**

Dated at Anchorage, Alaska, this __8th__ day of July 2005.

_____/s/ James K. Singleton, Jr._____
**JAMES K. SINGLETON, JR.**
United States District Judge

ORDER